UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

**JUN 2 7 2012**

Clerk, U.S. District and
Bankruptcy Courts

ANDRE L. McRAE,                                      )
                                                     )
                           Plaintiff,                )
                                                     )
                                                     )
v.                                                   )     Civil Action No. 09-2052 (RJL)
                                                     )
UNITED STATES DEPARTMENT                             )
OF JUSTICE, *et al.*,                                )
                                                     )
                           Defendants.               )
                                                     )

**MEMORANDUM OPINION**
June **23** , 2012 [Dkt. ##12, 21, 27]

This matter is before the Court on Defendants' Motion for Summary Judgment

[Dkt. #12] and Defendants' Supplemental Motion for Summary Judgment [Dkt. #27].[1]

For the reasons discussed below, the former is GRANTED in part and DENIED in part,

and the latter is GRANTED.

I. BACKGROUND

Pursuant to the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552,

plaintiff submitted requests for information to two components of the United States

Department of Justice ("DOJ"):  the Executive Office for the United States Attorneys

---

[1]     Plaintiff's Motion for Summary Judgment [Dkt. #21] does not comply in
substance or form with Rule 56 of the Federal Rules of Civil Procedure or Local Civil
Rule 7(h).  The motion is therefore DENIED.

("EOUSA") and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

Compl. ¶ 1 [Dkt. #1]. In relevant part, the plaintiff requested:

> 1. Any and all investigative reports on file with ATF in refere[n]ce to docket number 3:04 CR 157.
> 2. Any and all agent field note[s] on file in reference to docket number 3:04 CR 157.
> 3. Any and all wire-tap recordings and transcripts in reference to docket number 3:04 CR 157.
> 4. The April 16, 2004, government 302, drug transaction report and agent field notes generated by Detective Ortiz of the Charlotte-Mecklenburg Police Dipartment [sic], in reference to docket number 3:04 CR 157.

Ex. 1 to Compl. at 2. Plaintiff also requested a waiver of fees associated with the search

for and copying of any responsive records. *Id.* at 1.

### A. Request to the EOUSA (No. 08-3671)

The EOUSA acknowledged receipt of plaintiff's request (No. 08-3671), notified

plaintiff that "[s]ome of the information you requested originate[d] with another federal

agency," the ATF, and instructed plaintiff to contact ATF directly. *See* Ex. 2 to Compl.

at 1. The EOUSA also informed plaintiff that it would "continu[e] to process those

portions of your request which pertain[ed] to records in the possession of the EOUSA."

*Id.*

At the time plaintiff filed his complaint, he had received no records from the

EOUSA. Compl. ¶ 20. Subsequently, the EOUSA released seventeen pages in full,

released one page in part, and withheld no records in full, having redacted certain

information under Exemption 7(C). Ex. (Letter to plaintiff from W.G. Stewart II dated

Apr. 27, 2010) to Pl.'s Mot. for Summ. J. at 1. Plaintiff clearly was dissatisfied with this

response, and asserted that "[t]he government has failed to provide justification for

2

nondisclosure." Pl.'s Mot. for Summ. J. at 3.  Plaintiff described the requested records as

"trial props" which had been introduced as evidence in his criminal case, and he asserted

that they could be "found in the government's case file, in the care and custody of the

United States Attorne's [sic] Office . . . [for] the Western District of North Carolina,

Charlotte Division." *Id.*

### B.  Requests to the ATF

#### 1.  Request No. 09-0196

The ATF acknowledged receipt of plaintiff's FOIA request (Request No. 09-0196)

by letter dated November 20, 2008.  Decl. of Marilyn R. LaBrie ("LaBrie Decl.") [Dkt.

#12-1], Attach. to Mem. of P. & A. in Supp. of Defs.' Mot. for Summ J. ("Defs.' Mem."),

¶ 4.  In addition, the ATF denied plaintiff's request for a fee waiver and advised him of

his right to appeal this determination to the DOJ's Office of Information Policy ("OIP").[2]

*Id.*; *see* Ex. B to LaBrie Decl.

#### 2.  Request No. 09-0246

Apparently acting on the EOUSA's suggestion, plaintiff submitted a FOIA request

directly to the ATF.  LaBrie Decl. ¶ 6; *see* Exs. D & E to LaBrie Decl.  The ATF

assigned this request a new tracking number, No. 09-0246.  Ex. F to LaBrie Decl.  Before

processing the request, the ATF asked plaintiff to "clarify his secondary identifiers, i.e.,

other social security numbers that he used," and to confirm his "agreement to pay for any

costs associated with the processing of his request."  LaBrie Decl. ¶ 8; *see* Ex. F to

---

[2]      The OIP is also referred to as the Office of Information and Privacy, *see, e.g.*,
LaBrie Decl. ¶ 15, and the Office of Privacy and Information, Ex. B to LaBrie Decl.

LaBrie Decl.  Plaintiff responded and expressed his understanding that he was entitled to two hours of search time and 100 pages of records at no cost.  LaBrie Decl. ¶ 9; Ex. G to LaBrie Decl.

### 3.  Request Nos. 09-0304, 09-523, and 09-0756

Plaintiff sent a second letter which asked the ATF to devote its time to a search for ATF "Special Agent Terrell Tadeo (ATF, Charlotte, N.C.) final investigatory notes regarding Count 1, Conspiracy to possess 50 grams or more and 5 kilos of cocaine[,] and the actual police report, and wire recording/transcript of the April 16th 2004, drug transaction involving Detective Rolando Ortiz, of the Charlotte-Mecklenburg Police Dept., and any other notes regarding this transaction which is Count 2 on the indictment." Ex. H to LaBrie Decl. at 1 (emphasis removed).  The ATF initially denied plaintiff's FOIA request (No. 09-0304) in full pursuant to Exemption 7(A).  LaBrie Decl. ¶ 13. "[T]he field office . . . advised that the case ha[d] not been closed," and that "release of this information could reasonably be expected to interfere with enforcement proceedings."  Ex. K to LaBrie Decl.

Plaintiff sent a written response to the ATF.  LaBrie Decl. ¶ 14.  He explained that his criminal "case ha[d] been closed since December 11, 2007, the day of [his] sentencing," and argued that, "when a case goes into the appellate stages, . . . the release of information pertaining to that case can not alter or change the results of the jurors['] verdicts."  Ex. L to LaBrie Decl. at 1.  Apparently the ATF assigned this matter yet another tracking number, No. 09-523, upon receipt of plaintiff's correspondence.  *See* Ex. N to LaBrie Decl.

4

Plaintiff challenged the decision to withhold records under Exemption 7(A) by pursuing an appeal (No. 09-0989) to the OIP. LaBrie Decl. ¶ 15; *see* Ex. M to LaBrie Decl. While the appeal was pending, the ATF granted in part plaintiff's request No. 09-0304, presumably on reconsideration of the applicability of Exemption 7(A). LaBrie Decl. ¶ 18. On March 18, 2009, the ATF released 155 pages of records after having redacted certain information under Exemptions 2, 3, and 7(C), and withheld four documents (eight pages) of records in full under Exemption 7(C). Defs.' Mem. at 4-5; LaBrie Decl. ¶ 18; *see* Ex. P to LaBrie Decl. at 2. In light of these releases, the OIP informed plaintiff that he could appeal any future determination made by the ATF. Ex. Q to LaBrie Decl.

Plaintiff's next correspondence to the ATF explained that the records he received did not contain the information he sought.[3] *See generally* Ex. R to LaBrie Decl. He asked to "resubmit [his] F.O.I.A. request" in order to "obtain specific information/documents from Agent Terrell Tadeo." Ex. R to LaBrie Decl. at 4. The ATF assigned this re-submitted request a separate tracking number (No. 09-0756). *See* Ex. U to LaBrie Decl. Further "review of all of the documents for litigation" led the ATF

---

[3]     Plaintiff also appealed this determination to the OIP. LaBrie Decl. ¶ 21; Ex. S to LaBrie Decl. Apparently on the mistaken assumption that plaintiff's appeal pertained to the records released by the ATF on March 18, 2009, LaBrie Decl. ¶ 24 n.2, the OIP informed plaintiff that it had remanded his request to the ATF "for further search for and processing of responsive records," Ex. V to LaBrie Decl.

to identify and release eight pages of records "which were withheld in full, but which contained further segregable information." LaBrie Decl. ¶ 25; Ex. W to LaBrie Decl.[4]

### C. Plaintiff's Criminal History

In order to place certain of plaintiff's arguments in context, it is useful to review his criminal history:

> Following his Spring 2004 guilty plea to federal charges unrelated to this case, McRae's best friend, Damon Chamberlain (Chamberlain), began cooperating with ATF Special Agent Terrell Tadeo (Agent Tadeo), who was investigating drug and firearm activity in the Charlotte, North Carolina area. Through information provided by Chamberlain, Agent Tadeo learned that McRae regularly carried a .40 caliber firearm and sold both cocaine and cocaine base (crack).

> On April 15, 2004, Chamberlain placed a recorded call to McRae to set up a drug deal with an undercover police officer, Detective Rolando Ortiz (Ortiz), from the Charlotte–Mecklenburg Police Department (CMPD). In the call, McRae discussed selling marijuana and cocaine and a debt McRae owed to a drug source from the Dominican Republic.

> On April 16, 2004, Ortiz contacted McRae and arranged to purchase an ounce of crack later that day at a Bi–Lo grocery store (Bi–Lo) parking lot. Prior to the sale, Agent Tadeo and CMPD officers set up a surveillance of the parking lot. Ortiz and Chamberlain arrived at the Bi–Lo parking lot in Ortiz's unmarked vehicle. McRae entered Ortiz's vehicle and sold an ounce of crack to Ortiz.

> Instead of arresting McRae at that time, Agent Tadeo decided to try to arrange a drug deal involving a larger amount of drugs. His attempt to arrange a larger drug deal failed, so Agent Tadeo decided to see if Chamberlain could arrange a deal involving the sale of a firearm.

> On May 17, 2004, Chamberlain placed a recorded call to McRae. In the call, Chamberlain asked McRae to get him a "three pound" or .357

---

[4]   "[I]t was determined that records which did not seem to pertain to [plaintiff] and which had been redacted under a concern of confidential source information, had small portions of segregable information, which was deemed relevant to [plaintiff's] request." LaBrie Decl. ¶ 25 n.3.

magnum firearm. McRae agreed to do so and proposed meeting nearby at "Shauna's house" within an hour.

At this point, Agent Tadeo gathered some CMPD street unit officers with the intention of directing these officers to stop McRae en route to Shauna's house. Agent Tadeo decided not to stop McRae himself because he did not want McRae to know that a federal investigation of his drug activities was underway. Agent Tadeo told the CMPD officers that: (1) McRae was a convicted felon; (2) he had monitored that day a conversation between McRae and Chamberlain wherein McRae agreed to furnish Chamberlain a .357 magnum firearm; (3) McRae regularly carried a .40 caliber firearm; and (4) there may be drugs in McRae's vehicle, as McRae sold crack to an undercover officer on April 16.

Two CMPD officers present at the meeting stopped McRae on his way to Shauna's house. During a search of McRae's vehicle, the officers recovered a .357 magnum firearm, a .40 caliber firearm, and a quantity of crack in excess of five grams. Marijuana was found on McRae's person . . . .

*United States v. McRae*, 336 F. App'x 301, 302-03 (4th Cir. 2009) (per curiam), *cert.*

*denied*, 130 S. Ct. 1110 (2010). A jury convicted plaintiff on all counts,[5] and "[o]n

December 11, 2007, he was sentenced to a total of 687 months' imprisonment." *Id.* at

304. The convictions were affirmed on appeal. *Id.* at 309.

---

[5]     A federal grand jury indicted plaintiff on the following counts:

Count One charged McRae with conspiracy to possess with the intent to distribute five kilograms or more of cocaine and fifty grams or more of crack, 21 U.S.C. §§ 841 and 846 . . . . Counts Two, Three, and Six charged McRae with possession with the intent to distribute five grams or more of crack, *id.* § 841, relating to the crack recovered on April 16, May 17, and May 26, 2004. Counts Four and Seven charged McRae with possession of a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c), relating to the firearm seizures on May 17 and May 26, 2004. Counts Five and Eight charged McRae with possession of a firearm by a convicted felon, *id.* § 922(g), again relating to the firearm seizures on May 17 and May 26, 2004.

*McRae*, 336 F. App'x at 304.

## II. DISCUSSION

### A. Summary Judgment in a FOIA Case

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if [the agency] demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F. 3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

Summary judgment may be based solely on information provided in an agency's supporting affidavits or declarations if they are relatively detailed and "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption[s], and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see Beltranena v. Clinton*, 770 F. Supp. 2d 175, 181-82 (D.D.C. 2011). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v.*

8

*U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142 (1989)).

### B. The EOUSA's Response to Plaintiff's FOIA Request

Although plaintiff's complaint does not name the EOUSA as a party in this action, *see* Compl. at 2, the Court construes the pleading as a challenge to the EOUSA's response, or lack thereof, to plaintiff's FOIA request. As the defendants' Motion for Summary Judgment [Dkt. #12] offers neither a description of the EOUSA's search for records responsive to plaintiff's FOIA request nor a justification for withholding information under Exemption 7(C), the Court DENIES, without prejudice, defendants' motion on this issue.

### C. The ATF's Search for Responsive Records

Compliance with FOIA ordinarily requires an agency to search its records, either manually or by automated means, for information responsive to a request. *See* 5 U.S.C. § 552(a)(3)(C)-(D). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The agency may submit affidavits or declarations that "explain in reasonable detail the scope and method" of the agency's search to demonstrate FOIA compliance. *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). However, if "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542.

1. Searches of TECS and the Charlotte Field Office

The ATF began its search with a query of Treasury, Enforcement, Communications System ("TECS"). LaBrie Decl. ¶ 55. "TECS is a computerized information system designed to identify individuals and businesses suspected of or involved in violation of federal law." *Id.* In addition to this function, TECS provides a means for "message transmittal between Federal law enforcement offices and other international, state, and local law enforcement agencies." *Id.* For example, TECS provides access to NCIC, the FBI's National Crime Information Center, and NLETS, the National Law Enforcement Telecommunication Systems. *Id.*

Although TECS is "owned by the Bureau of Customs and Border Protection, Department of Homeland Security," *id.*, through TECS, the ATF is able to locate records within its Criminal Investigation Report System, *id.* ¶ 55 n.6. "ATF records within TECS include: wanted persons and fugitives; known and suspected violators of laws falling within the [ATF's jurisdiction]; felons and dishonorably discharged veterans who have [asked] to own firearms and/or explosives . . . ; violent felons; and gangs and terrorists." *Id.* ¶ 56. The system maintains records in seven subsections: People, Businesses, Aircraft, Firearms, Vehicles, Vessels and Things. *Id.* TECS searches "reveal ATF Investigation numbers that correspond to a specific field division where any files would be located." *Id.*

N-Force, the ATF's case management system, operates as the ATF's "official case file of record for documenting investigative activity and information, creating reports, tracking investigative leads and linking data." *Id.* ¶ 57. "Each criminal investigation . . .

10

is assigned a unique case number." *Id.* "N-Force contains the following broad fields: Overview, General, Techniques/Services, Firearms, Arson/Explosives, Investigative Profile, and Case Users," and each broad field has "specific sub-data fields" containing, among other things, "information about the type of investigation being conducted . . . , the persons involved, property seized, reports of investigation, . . . [and] the types of techniques and services employed during the investigation." *Id.* A query of N-Force is made using an individual's name, date of birth or social security number, property or vehicles with which an individual is associated, or specific words found in Reports of Investigation. *Id.*

The ATF used plaintiff's full name as a search term, and the TECS query indicated that responsive records would be located at the Charlotte Field Division and retrievable under Criminal Investigation Number 763015-04-0041.[6] *Id.* ¶ 58. Staff at the Charlotte Field Division then "undertook a search that located all criminal case files within [that] office that were retrievable both by plaintiff's full name and Criminal Investigation Number 763015-04-0041." *Id.* This search yielded 340 pages of potentially responsive records which were forwarded to the ATF's Disclosure Division for processing.[7] *Id.* None of the searches located transcripts of electronic surveillance, CDs of surveillance, agent investigatory notes, police reports, or police property inventory reports. *See id.* ¶¶ 59-60. After this litigation commenced, "ATF's Office of

---

[6]    Plaintiff was not the primary subject of this particular criminal investigation. LaBrie Decl. ¶ 58.

[7]    Other materials in this case file "related to individuals other than [plaintiff], contained no mention of [plaintiff] and were therefore considered not within the scope of his request." LaBrie Decl. ¶ 58.

Chief Counsel asked for an additional search to be completed specifically regarding these documents and materials," and the case agent at the Charlotte Field Division "confirmed that ATF does not possess a copy of the recorded conversation on April 16, 2004, which [plaintiff] requested and which was presented at trial." *Id.* ¶ 60. According to the case agent, had there been "handwritten, investigative notes, they would have been formalized in the Report of Investigation . . . which was processed for release to [plaintiff] and then would have been destroyed after the case had closed pursuant to ATF policy." *Id.* ¶ 61.

### 2.  Plaintiff's Challenges to the ATF's Searches

Plaintiff first argues that the ATF has released "154 pages of redacted, non-requested, unusable documents, 109 pages of which pertained to plaintiff's prior criminal history from over 16 years ago" and which were "[n]ot at all relevant to plaintiff's request or criminal case." Pl.'s Resp. to Def.'s Summ. J. ("Pl.'s Opp'n") [Dkt. #15] at 2-3.  Next, plaintiff challenges the adequacy of the search of Charlotte Field Division records for "transcripts of electronic surveillance used to aid jury, CD Rom of actual wire surveillance of April 16th 2004, Drug Transaction, agents['] investigative notes, and Detective Rolando Ortiz Police report in regards to the April 16th 2004 drug sale, and his destruction of evidence report on said purchased drugs." Pl.'s Opp'n at 5.  Plaintiff was convicted of conspiracy, and he requests the investigative notes in order to identify the co-conspirators. *See id.*  He asserts that this information "should have been included on 'Report of Investigation.'" *Id.*  According to plaintiff, the ATF's inability to locate information "that led to, and assisted the conviction of a defendant that possibly was not

guilty of said charge . . . is absurd, and indeed Bad Faith on the Case Agent Terrell Tadeo, and the ATF as a whole." *Id.* at 8. None of these arguments are persuasive.

The ATF's supporting declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted). Furthermore, a requester's challenge requires that he present evidence rebutting the agency's initial showing of a good faith search. *See Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993); *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351-52 (D.C. Cir. 1983). Plaintiff fails to meet this evidentiary burden.

Plaintiff's level of satisfaction with the materials released, however, does not determine the adequacy of the ATF's search. "[T]he issue is *not* whether any further documents might conceivably exist, but rather whether the government's search for responsive documents was adequate." *Weisberg*, 705 F.2d at 1351 (citing *Perry*, 684 F.2d at 128) (per curiam) (emphasis in original); *see Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). The Court's authority is limited to the release of non-exempt agency records in existence at the time the agency receives a FOIA request. The ATF is not obligated "to create or retain documents; [FOIA] only obligates [the agency] to provide access to those which it in fact has created and retained." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980). And, "the fact that responsive documents once existed does not mean that they remain in the [ATF's]

custody today or that the [ATF] had a duty under FOIA to retain the records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

Lastly, plaintiff presumes that "[a]ny reports that were orchestrated by the ATF Case Agent Terrell Tadeo should be in the custody of the Charlotte Field Office," Pl.'s Opp'n at 15, rather than the Charlotte-Mecklenburg Police Department, *id.* at 14. Marilyn R. LaBrie, the Acting Chief of ATF's Disclosure Division, (the "declarant") avers, on behalf of the defendants, that the "ATF is not the primary custodian" of records originating at the Charlotte-Mecklenburg Police Department, LaBrie Decl. ¶ 62, even though some of these records may have found their way into ATF files. She avers that the "ATF reviewed and released all records [in its] custody . . . received from the police department," and any "further inquiries regarding the police reports or property inventory reports . . . should [be addressed to] the appropriate police department." *Id.* The ATF is not required to maintain the Charlotte-Mecklenburg Police Department's records, even if they pertained to a matter under investigation by the ATF. *See Dipietro v. Exec. Office for U.S. Attorneys*, 357 F. Supp. 2d 177, 182 (D.D.C. 2004) ("No agency is obligated to produce records that it does not maintain.").

Based on review of the ATF's supporting declarations, the Court concludes that the ATF conducted adequate searches, which were designed to locate records responsive to plaintiff's FOIA requests.

### D. Exemptions Claimed by the ATF

### 1. Exemption 3

Exemption 3 protects records that are "specifically exempted from disclosure by statute" provided that such statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3). The Consolidated Appropriations Act of 2005, Pub. L. No. 108-447, 118 Stat. 2809 (2004), is a statute on which an agency may rely for purposes of Exemption 3. It provides in relevant part:

> [N]o funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution . . . and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery in any civil action . . . or in any administrative proceeding other than a proceeding commenced by [ATF] . . . or a review of such action or proceeding.

118 Stat. 2859-60. Under Exemption 3, the ATF redacted one page which "contains information related to the importation and manufacture of specific firearms, which is wholly derived from the contents of the Firearms Trace System Database referenced in Public Law 108-447." LaBrie Dec. ¶ 35. The declarant explains that the Trace Reports are "based [on] and derived from information required to be kept by a Federal Firearms Licensee (FFL) or importer pursuant to 18 U.S.C. § 923(g)," and "through the language

15

of P[ublic] L[aw] 108-447, Congress has expressly prohibited ATF from releasing such documents to the public." *Id.* The ATF therefore properly withheld all information derived from the Firearms Trace System Database. *See Singh v. FBI*, 574 F. Supp. 2d 32, 45-46 (D.D.C. 2008) (agency properly withheld firearms transaction records); *Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d 82, 111-12 (D.D.C. 2008) (agency properly withheld firearms trace reports); *Watkins v. Bureau of Alcohol, Tobacco & Explosives*, No. 04-800, 2005 WL 2334277, *1 (D.D.C. Sept. 1, 2005) (concluding that the 2005 appropriations legislation "prevent[s] the public release of sensitive firearms trace data not so much for budgetary reasons than out of concern that such disclosures could jeopardize criminal investigations").

### 2. Exemption 7

### a. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *FBI v. Abramson*, 456 U.S. 615, 622 (1982). "To show that the disputed documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

The "ATF is a criminal and regulatory enforcement agency within the [DOJ] and is responsible for, among other things, enforcing Federal firearms laws including the Gun

16

Control Act of 1968, 18 US.C. §§ 921-930." LaBrie Decl. ¶ 36. The declarant avers that "ATF records maintained in accordance with [its] criminal law enforcement duties[] meet the threshold of Exemption 7." *Id.*

Although a law enforcement agency's "decision to invoke [E]xemption 7 is entitled to deference," *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998) (citing *Pratt v. Webster,* 673 F.2d 408, 419 (D.C. Cir. 1982)), deference does not amount to blind acceptance of the agency's assertions. "The D.C. Circuit has made clear . . . that an agency's broad claim that its files are law enforcement files – without addressing the particular documents at issue – is insufficient to establish that the specific documents in dispute within those files are law enforcement records under FOIA." *Lardner v. Dep't of Justice*, 638 F. Supp. 2d 14, 32 (D.D.C. 2009) (citing *Campbell*, 164 F.3d at 32)), *aff'd*, 398 F. App'x 609 (D.C. Cir. 2010) (per curiam).

Missing from the ATF's declaration is a statement affirmatively linking the relevant records and an investigation of plaintiff's activities pursuant to the ATF's law enforcement authority. However, the omission is *not* fatal in this case, particularly absent any objection by plaintiff. It is apparent from the plain language of plaintiff's FOIA requests and his criminal history that the information he seeks was compiled for law enforcement purposes.

b. Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to

17

particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007). The privacy interest at stake belongs to the individual, *not* the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). The D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs.,* 926 F.2d at 1206.

The ATF withheld the "identities of ATF special agents and other [federal and state] law enforcement personnel that appear in law enforcement records" on the ground that "disclosure might seriously prejudice their effectiveness in conducting investigations to which they are assigned and subject them to unwarranted harassment." LaBrie Decl. ¶¶ 39, 41. Balancing "the interest in disclosure against the individuals' privacy interest," the ATF asserts that the privacy interest prevails. *Id.* ¶ 42. Release of information about these law enforcement officers "is unlikely to add to the public's understanding of how [the ATF] works or how well it performs its duties," while bringing about an unwarranted invasion into these individuals' personal privacy. *Id.*

18

In addition, the ATF withheld "the names and identifying information of third parties who were investigated by the ATF." *Id.* ¶ 43. These individuals "are described in sufficient detail" such that "third parties . . . familiar with the circumstances and facts of ATF's investigation" could identify them. *Id.* The declarant states that these individuals "could reasonably be expected to be embarrassed and humiliated by being associated with this investigation." *Id.* Apparently witnesses are among the individuals whose identities are being protected, *see id.,* and the declarant states that "references to witnesses in the responsive files have the very real potential to endanger [them] or cause harassment and harm to [their] lives and reputations." *Id.* "After balancing the interests at stake, ATF determined that [information about these individuals] must be withheld, because disclosure . . . could reasonably be expected to cause [them] embarrassment, harassment, and harm," while doing "little, if anything at all, to aid the public's understanding of ATF." *Id.*

Initially, it appeared that plaintiff did not object to the redaction of individuals' names from the relevant records. He "has never had a concern for who is who, and who said what," primarily because "the cat was let out of the bag during the pretrial and trial phase[s]." Pl.'s Opp'n at 3. However, a liberal reading of this statement leads the Court to conclude that plaintiff indeed challenges the redactions made under Exemption 7(C) by arguing that this information already has been released publicly. *See id.*

Plaintiff claims that "all statements and law enforcement witnesses were disclosed into the public forum by way of testimony." *Id.* Now that this information "has been officially acknowledged or is in the public domain," *id.* at 4, plaintiff contends that it

19

cannot be withheld under Exemption 7(C). For example, plaintiff purports to know that the ATF's "confidential source was his Best Friend acting in a[n] informant capacity and double dipping for his own financial and sentence reduction benefit." *Id.* at 3. He also knows that Agent Tadeo testified before a grand jury, at a suppression hearing, and at trial. *See id.* at 3, 4, 8, 17. In support of his argument, he submits excerpts of transcripts from grand jury proceedings, *see* Exs. 1 & 6 to Pl.'s Opp'n (excerpts of grand jury transcripts dated June 29, 2004 and Dec. 13, 2005, respectively), a suppression hearing, *see* Ex. 10 to Pl.'s Opp'n (excerpt of suppression hearing transcript dated Mar. 9, 2006), and trial, *see* Ex. 11 to Pl.'s Opp'n (excerpt of trial transcript dated Nov. 29, 2006).

While it is true that public disclosure of information may lead to the waiver of a FOIA exemption, plaintiff nonetheless bears the initial burden of showing that the requested information: (1) is "as specific as the information previously released"; (2) "match[es] the information previously disclosed"; and (3) was "made public through an official and documented disclosure." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990); *see also Cottone v. Reno,* 193 F.3d 550, 554 (D.C. Cir. 1999). "Prior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain." *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (citation omitted). Speculation as to the content of the withheld information in the context of open court proceedings does not establish that it has entered the public domain. *See Whalen v. U.S. Marine Corps,* 407 F. Supp. 2d 54, 59 (D.D.C. 2005) (noting that a requester's "educated *guess*" as to the contents of a withheld report does not constitute a waiver of a FOIA exemption). Furthermore, a third party may

testify in open court and maintain an interest in his personal privacy, *see, e.g., Jones v. FBI*, 41 F.3d 238, 247 (6th Cir. 1994), and he maintains an interest in his personal privacy even if the requester already knows, or is able to guess, his identity, *see Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

By asserting that Agent Tadeo "orchestrated" the criminal case against him, Pl.'s Opp'n at 7, and otherwise acted "with other law enforcement officials affiliated with [his] case . . . to scheme up a justification" for charging plaintiff with conspiracy, *id.* at 28, the Court presumes that plaintiff is asserting a public interest in disclosure of the information withheld under Exemption 7(C), *see id.* at 29. His argument appears to be that the public has an interest in learning of wrongdoing by federal law enforcement officers. According to plaintiff, Agent Tadeo intentionally withheld records responsive to his FOIA request, even though such information should have been released to plaintiff during the criminal proceedings. *Id.* He claims that his "chances for Exoneration lies [sic] within ATF Case Agent [Tadeo's] possession." *Id.* at 30.

For purposes of Exemption 7(C), "the only public interest relevant . . . 'is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773). It is the requester's obligation to articulate a public interest sufficient to outweigh the individual's privacy interest, and the public interest must be significant. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). Here, plaintiff produces no such evidence, and, therefore, the third parties' privacy interests prevail. To the extent that plaintiff believes his allegedly wrongful conviction is

a matter of public interest, he is mistaken. Any desire plaintiff may have in using the requested records for the purpose of proving his innocence or attacking his criminal conviction is not a public interest. *See Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002) (finding that a requester's "personal stake in using the requested records to attack his convictions does not count in the calculation of the public interest").

The ATF's decision to withhold the names of and identifying information about federal and state law enforcement agents and third parties whose names appear in the responsive records is entirely consistent with the prevailing law. *See, e.g., Negley v. FBI*, 825 F. Supp. 2d 63, 72-3 (D.D.C. 2011) (Exemption 7(C) properly invoked to withhold names and/or identifying information of "FBI personnel," confidential sources, "State government employees or non-federal law enforcement officers," "third parties merely mentioned" in the records, "individuals interviewed by the FBI," and "third parties of investigative interest"); *Marshall v. FBI*, 802 F. Supp. 2d 125, 134-35 (D.D.C. 2011) (FBI properly redacted "names and identifying information of FBI Special Agents, FBI personnel, and third parties of investigative interest" pursuant to Exemption 7(C) due to privacy interests); *McGehee v. U.S. Dep't of Justice*, 800 F. Supp. 2d 220, 233-34 (D.D.C. 2011) (FBI properly withheld names and information related to state and federal officials and other third parties). The ATF's reliance on Exemption 7(C), then, is proper.

c. Exemption 7(D)

Exemption 7(D) protects from disclosure "records or information compiled for law enforcement purposes" that:

> [C]ould reasonably be expected to disclose the identity of a confidential
> source . . . [who] furnished information on a confidential basis, and, in the
> case of a record or information compiled by criminal law enforcement
> authority in the course of a criminal investigation . . ., information
> furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no general "presumption that a source is confidential

within the meaning of Exemption 7(D) whenever [a] source provides information [to a

law enforcement agency] in the course of a criminal investigation." *U.S. Dep't of Justice

v. Landano*, 508 U.S. 165, 181 (1993). Rather, a source's confidentiality must be

determined on a case-by-case basis. *Id.* at 179-80. "A source is confidential within the

meaning of [E]xemption 7(D) if the source provided information under an express

assurance of confidentiality or in circumstances from which such an assurance could be

reasonably inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal

quotation marks and citation omitted).

　　　The D.C. Circuit has held that the violence and risk of retaliation attendant to drug

trafficking warrant an implied grant of confidentiality to a source. *See Mays v. DEA*, 234

F.3d 1324, 1329-30 (D.C. Cir. 2000). The nature of the crime investigated and the

informant's relation to it are important factors in determining whether implied

confidentiality exists, as well. *Landano*, 508 U.S. at 179-80; *Coleman v. FBI*, 13 F.

Supp. 2d 75, 82 (D.D.C. 1998) (finding that plaintiff's conviction "of numerous violent

crimes" including murder, rape and kidnaping, and "the relation of the witnesses thereto

is precisely the type that the implied confidentiality exemption expressed in *Landano* is

designed to encompass").

The declarant explains that "[t]he ATF reports accounts of interviews and undercover operations involving named sources who provided information regarding specifics about plaintiff's criminal activity." LaBrie Decl. ¶ 46. In this case, the declarant asserts implied confidentiality, stating, "at the time the individual's cooperation was secured, [he] expected that [his] identity and the information [he] provided was on a confidential basis and that it would remain so." *Id.* ¶ 49. In the ATF's experience, the declarant states, "violations of the Federal firearms and narcotics laws often consist of, or are accompanied by[,] acts of violence, and that individuals who provide information concerning these crimes face a very real possibility of violent reprisal." *Id.* ¶ 48.

Plaintiff objects to the declarant's statements, *see* LaBrie Decl. ¶ 43, regarding his criminal history, *see* Pl.'s Opp'n at 24-25, to support the ATF's assertion of both Exemption 7(C) and Exemption 7(D), particularly insofar as the declarant attributes "notoriously violent" offenses to plaintiff, LaBrie Decl. ¶ 43. Plaintiff deems the declaration "misleading," coming from "an individual who[] has no knowledge of Plaintiff's past history other than the documents retrieved from [law enforcement] databases which only discloses 'past charge and conviction'" without providing "details on charged offense, or actual police report[s]." Pl.'s Opp'n at 24. Plaintiff asserts that he has no past affiliation with a gang, *id.* at 25, and had the declarant "delv[ed] further into plaintiff's past criminal history, . . . [s]he would have learned that plaintiff was a young misguided youth, living a drug addicted, petty lifestyle that has never caused any harm to any one other than himself, or been charged with any violent offense in his life," *id.* at 24-25.

The declaration is silent, however, as to the confidential source's relationship to or knowledge of plaintiff's criminal activities. In sum, it fails to link plaintiff to "notoriously violent" activities, such as gang-related murder, *see Landano*, 508 U.S. at 179, or violent acts of retaliation for witnesses' cooperation with law enforcement, *see Shores v. FBI*, 185 F. Supp. 2d 77, 84 (D.D.C. 2002), or any other circumstances under which an assurance of confidentiality can be implied. Without more, the ATF cannot show that its decision to withhold information pertaining to this confidential source or the information he provided is justified under Exemption 7(D). *See, e.g., Lazaridis v. U.S. Dep't of Justice*, 766 F. Supp. 2d 134, 148-49 (D.D.C. 2011). Therefore, as to this issue, defendants' Motion for Summary Judgment is DENIED.

d. Exemption 7(E)[8]

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "The first clause of Exemption 7(E) affords 'categorical' protection for 'techniques and procedures' used in law enforcement investigations or prosecutions." *Pub. Emps. for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water Comm'n*, No. 11-261, 2012 WL 933709, at *16

---

[8]     Initially, the ATF withheld "file numbers and other internal administrative codes" under FOIA Exemption 2. Second Decl. of Marilyn R. LaBrie [Dkt. #27-1], Attach. to Defs.' Supp. Mot. for Summ. J., ¶ 3. The "ATF is now invoking Exemption [7(E)] to protect from disclosure all the information previously redacted from records provided to [plaintiff] pursuant to Exemption [2] in this matter." *Id.* ¶ 9.

25

(D.D.C. Mar. 20, 2012) (quoting *Showing Animals Respect & Kindness v. U.S. Dep't of Interior,* 730 F. Supp. 2d 180, 199-200 (D.D.C. 2010)). "Exemption 7(E)'s second clause separately protects 'guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law.'" *Id.* (quoting 5 U.S.C. § 552(b)(7)(E)).

The ATF "redacted information from 79 pages contained in [TECS], a law enforcement database used by ATF to conduct criminal history checks." Second Decl. of Marilyn R. LaBrie ("2d LaBrie Decl."), Attach. to Defs.' Supp. Mot. for Summ. J., ¶¶ 4, 10. This information is described as "data displayed on screen prints of TECS," which "identifies the terminal from which a query was accomplished by a terminal ID and a logical unit ID to show its mainframe connection," and other data "relates to the software applications that identify how the displayed record was retrieved," that is, the mapping and routing codes, and codes "that allow movement to other programs from the displayed screen." *Id.* at ¶ 10. The declarant explains disclosure of this information to "computer literate individuals with mainframe knowledge[] could provide information on the structure of the mainframe system and expose the system to circumvention." *Id.* Disclosure of these computer codes also "could facilitate unauthorized access to TECS and other ATF databases and interfere with investigations and law enforcement activities at all levels." *Id.*

For similar reasons, the ATF redacted "computer codes and case numbers from other . . . law enforcement computer databases," including NCIC and databases maintained by the Charlotte-Mecklenburg Police Department and the North Carolina

Department of Correction. *Id.* ¶ 11. From "5 pages of Charlotte-Mecklenburg/Property

Reports[,] 2 pages of North Carolina Department of Correction Cover Sheet and Offender

screen printout[,] and 6 pages of North Carolina Department of Correction finger print

sheets," the ATF redacted information "that referred to other law enforcement

databases." *Id.* ¶ 5. The ATF seeks categorical protection of information in these law

enforcement databases by arguing that disclosure "could harm their enforcement

capabilities and the entire, cooperative system of law enforcement throughout all levels

of government." *Id.* ¶ 11.

The D.C. Circuit has found that Exemption 7(E) "looks not just for circumvention

of the law, but for a risk of circumvention; not just for an actual or certain risk of

circumvention, but for an expected risk; not just for an undeniably or universally

expected risk, but for a reasonably expected risk; and not just for certitude of a

reasonably expected risk, but for the chance of a reasonably expected risk." *Blackwell v.*

*FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. IRS,* 562 F.3d 1190,

1193 (D.C. Cir. 2009)). On the theory that the redacted codes, case numbers, and other

computer information pertaining to the TECS, NCIC, and databases maintained by the

North Carolina authorities are techniques and procedures for law enforcement

investigation, the ATF adequately explained that disclosure of the information could

reasonably be expected to risk circumvention of the law. Its reliance on Exemption 7(E),

therefore, is proper.

### III. CONCLUSION

The Court concludes that the ATF conducted searches that were adequate and reasonable under the circumstances, and that it properly withheld information under FOIA Exemptions 3, 7(C), and 7(E). Thus, defendants' Supplemental Motion for Summary Judgment is GRANTED and defendants' Motion for Summary Judgment is GRANTED in part. Because defendants neither demonstrated the EOUSA's compliance with FOIA nor justified the ATF's decision to withhold information under Exemption 7(D), the Motion for Summary Judgment is DENIED in part without prejudice as to these issues. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge