UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDRE L. McRAE,                            )<br>                                                      )<br>            Plaintiff,                        )<br>                                                      )<br>     v.                                              )       Civil Action No. 09-2052  (RJL)<br>                                                      )<br>UNITED STATES DEPARTMENT  )<br>OF JUSTICE, *et al.*,                     )<br>                                                      )<br>            Defendants.                    )<br>                                                      ) | |

**MEMORANDUM OPINION**
(May 26, 2013)

This matter is before the Court on Defendants' Renewed Motion for Summary Judgment [ECF No. 40]. For the reasons discussed below, the motion will be granted.

I. BACKGROUND

Plaintiff currently is serving a lengthy prison sentence imposed by the United States District Court for the Western District of North Carolina:

> On June 29, 2004, a federal grand jury sitting in the United States District Court for the Western District of North Carolina indicted McRae on eight counts. Count One charged McRae with conspiracy to possess with the intent to distribute five kilograms or more of cocaine and fifty grams or more of crack, 21 U.S.C. §§ 841 and 846. Count One named [other individuals] as coconspirators, and alleged that the conspiracy began on or about January 1, 2004 and ended on or about May 17, 2004 [when McRae was arrested by Charlotte-Mecklenburg Police Department officers who were working with ATF Special Agent Terrell Tadeo]. Counts Two, Three, and Six charged McRae with possession with the intent to distribute five grams or more of crack, *id.* § 841, relating to the crack recovered on April 16, May 17, and May 26, 2004. Counts Four and Seven charged McRae with possession of a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c), relating to the firearm seizures on May 17 and May 26, 2004. Counts Five and Eight charged McRae with possession of a firearm by a

1

convicted felon, *id.* § 922(g), again relating to the firearm seizures on May 17 and May 26, 2004.

The case proceeded to trial, and a jury convicted McRae on all counts. On December 11, 2007, he was sentenced to a total of 687 months' imprisonment. McRae received concurrent 327-month sentences on the conspiracy and the possession with the intent to distribute crack counts; two concurrent 120-month sentences on the § 922(g) counts; and consecutive sentences of sixty and 300 months on the § 924(c) counts.

*United States v. McRae*, 336 F. App'x 301, 304 (4th Cir. 2009) (per curiam); *see* Pl.'s Mot. for Summ. J. [ECF No. 21], Ex. (Judgment in a Criminal Case, *United States v. McRae*, No. 3:04CR-00157 (W.D.N.C. Jan. 9, 2008) at 1-2).

On October 6, 2008, plaintiff submitted a request under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, to the Executive Office for United States Attorneys ("EOUSA"), a component of the United States Department of Justice ("DOJ"). Compl. at 3 ¶ 1. The request identified plaintiff by name, date and place of birth, and social security number; it also listed the case number and the district in which he was prosecuted. *See* Mem. of P. & A. in Supp. of Defs.' Renewed Mot. for Summ. J. ("Defs.' Mem."), Decl. of David Luczynski ("Luczynski Decl."), Ex. A (Freedom of Information Act/Privacy Act request to the EOUSA dated October 6, 2008). In addition to any investigatory records the EOUSA may have held, plaintiff sought additional items:

> I am requesting "All" of A.T.F. Terrel Tadeo (Case Agent) Field and Handwritten investigative notes leading up to the conviction of said case # 3:04 CR 157. I also am requesting Detective Rolando Ortiz['s] police report from April 16, 2004, sale and delivery of cocaine involving myself (Charlotte Meck [sic] Police Dept.)

Luczynski Decl., Ex. A; *see also* Compl., Ex. 1 (Letter to Gretchen C.F. Shappert, United States Attorney's Office for the Western District of North Carolina, from plaintiff dated October 16, 2008) at 2. The EOUSA notified plaintiff that some of the information he sought originated in the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), not the EOUSA, and

2

suggested that plaintiff contact the ATF directly. Luczynski Decl., Ex. C (Letter to plaintiff from William G. Stewart II, Assistant Director, Freedom of Information/Privacy Act Unit, EOUSA, regarding Request No. 08-3671 dated November 6, 2008). Only after this litigation commenced did "the EOUSA release[] seventeen pages in full [and] one page in part . . . , having redacted certain information under Exemption 7(C)." *McRae v. U.S. Dep't of Justice*, 869 F. Supp. 2d 151, 156 (D.D.C. 2012).

Having construed plaintiff's complaint as a challenge to the EOUSA's response, or lack of response, to his FOIA request, *see id.* at 160, the Court denied defendant's prior summary judgment motion in part because defendant had "offer[ed] neither a description of the EOUSA's search for records responsive to plaintiff's FOIA request nor a justification for withholding information under Exemption 7(C)." *Id.* at 160. The ATF, however, demonstrated that its search for responsive records was reasonable, *see id.* at 162, and that its decisions to withhold information under Exemptions 3, 7(C) and 7(E) were justified, *see generally id.* at 163-66, 168-69. Because it did not show that the decision to withhold under Exemption 7(D) information pertaining to the identities of and information provided by confidential sources was proper, its prior summary judgment motion was denied in part. *See id.* at 167-68.

Now before the Court is a renewed motion addressing these matters.

## II. DISCUSSION

### A. *Summary Judgment in a FOIA Case*

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the

class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F. 3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

Summary judgment may be based solely on information provided in an agency's supporting affidavits or declarations if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see Beltranena v. Clinton*, 770 F. Supp. 2d 175, 182 (D.D.C. 2011). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142 (1989)).

### B. The EOUSA's Search for Records Responsive to Plaintiff's FOIA Request

"The adequacy of an agency's search is measured by a standard of reasonableness . . . and is dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted). An agency must "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). The agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). Absent contrary evidence, such

affidavits or declarations are sufficient to demonstrate compliance with the FOIA. *Id.* at 127. However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542.

The EOUSA's declarant explained that each United States Attorney's Office maintains criminal case files prosecuted by that office. Luczynski Decl. ¶ 11. In this case, the FOIA Contact at the United States Attorney's Office for the Western District of North Carolina ("USAO/NCW") conducted the search for records responsive to plaintiff's request. *Id.* ¶ 11. That search included "e-mails to the Assistant United States Attorney[s] in the Criminal Division to ascertain whether they had any responsive records," as well as a search of LIONS, "the computer system used by United States Attorneys offices to track cases and to retrieve files pertaining to cases and investigations." *Id.* Through LIONS, a "user can access databases which can be used to retrieve information based on a defendant's name, the USAO number (United States' Attorney's Office internal administrative number), and the district court case number." *Id.* Using plaintiff's name as a search term, the FOIA Contact located 18 pages of records in the USAO/NCW. *Id.* ¶¶ 11-12. The declarant averred that "[t]here are no other records systems or locations within EOUSA or DOJ in which other files pertaining to [p]laintiff's name were maintained." *Id.* ¶ 11. Nor were there "other records systems or locations within the [USAO/NCW] in which other files pertaining to plaintiff's criminal case[] were maintained." *Id.* ¶ 13.

Plaintiff's challenge to the EOUSA's search is based on the agency's purported failure to locate records responsive to a "new" request he submitted, on an unspecified date, asking that the EOUSA "narrow [its] search to the [ATF Agent's] 'Recommendation of Report' to the U.S. Attorney's Office which would include the names of any other individuals involved in the

5

investigation of plaintiff and any information that the 'known' CI provided on plaintiff, and any other information provided on plaintiff." Pl.'s Opp'n to Defs.' Renewed Summ. J. ("Pl.'s Opp'n"), Decl. of Andre McRae ¶ 10.  Nor, he contends, did the EOUSA respond to his "request[] that the EOUSA narrow their [sic] search down to the April 16, 2004 wire-recording to a drug deal that involved an undercover detective from the Charlotte-Mecklenburg Police dept., the Confidential Informant and [him]self [a]s well as the transcripts that were used to aid the jury during trial while the recording was presented as evidence." *Id.*, McRae Decl. ¶ 12. Plaintiff argues that the EOUSA's declaration "is silent . . . [a]nd . . . fail[s] to reasonably detail the scope and method of [its] search within the U.S. Attorney's Office for the W.D.N.C. Charlotte Division.  And does not explain 'where is the April 16, 2004 drug deal recording, and it's [sic] transcribed transcript used to aid the jury,' and the Detective Rolando Ortiz . . . report of said drug deal." *Id.*, McRae Decl. ¶ 16. The LIONS search, he argues, <u>should</u> have directed them to where to locate the 'specific' requested recording played in <u>open</u> District Court relating to the same defendant[']s name, USAO number, and district court case number." Pl.'s Opp'n at 7 (emphasis in original).

"The issue in a FOIA case is not whether the [agency's] searches uncovered responsive documents, but rather whether the searches were reasonable." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted).  Plaintiff does not attach a copy of this "new" request, and nothing in the record demonstrates that the EOUSA received it.  The October 6, 2008 request sought a copy of Detective Ortiz's April 16, 2004 police report, and it does not mention specifically a recording or transcript of a recording of a drug deal occurring on that date.  The EOUSA is under no obligation to conduct another search for the recording at this late date. *See Williams v. Ashcroft*, 30 F. App'x 5, 6 (D.C. Cir. 2002) (holding that the Federal Bureau of

Prisons was "not required to search for or provide tape recordings . . . because [appellant] did not include these materials in his initial FOIA request"). The EOUSA demonstrates that its search for records responsive to plaintiff's October 6, 2008 request was reasonable under the circumstances, regardless of whether it produced the specific records plaintiff requested. *See Iturralde v. Comptroller of Currency,* 315 F.3d 311, 315 (D.C. Cir. 2003) ("[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate . . . . After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them."); *Rothschild v. Dep't of Energy*, 6 F. Supp. 2d 38, 40 (D.D.C. 1998) ("Perfection . . . is not the standard, and the government's failure to locate two responsive documents does not defeat the government's showing . . . that its search was adequate.").

### C. Exemption 7(C)

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), but only to the extent that disclosure of such records would cause an enumerated harm. *See Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). Exemption 7(C) protects information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether Exemption 7(C) applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), we must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.") (internal

7

quotation marks and citation omitted); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007). The privacy interest at stake belongs to the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). The D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

It is apparent from the plaintiff's criminal history and the nature of his FOIA request that the information he seeks was compiled for law enforcement purposes, namely, "to facilitate the investigation and criminal prosecution of the requester." Luczynski Decl. ¶ 15. Thus, the EOUSA easily meets the initial burden of establishing that the responsive records at issue fall within the scope of Exemption 7.

The EOUSA withholds under Exemption 7(C) the identities of third parties, such as potential witnesses and law enforcement personnel, on the ground that release of this information "could subject [them] to an unwarranted invasion of their personal privacy." Luczynski Decl. ¶ 16. The declarant explains that the "[r]elease of . . . personal identifiers could result in unwanted efforts to gain further access to such persons or to personal information about them – or subject them to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences – all to their detriment." *Id.* Further, the declarant states, "there was no countervailing public interest in the release of this privacy-protected information[] because its

dissemination would not help explain government activities and operations or outweigh third party individuals' privacy right in the information withheld under this exemption." *Id.* ¶ 17.

Plaintiff maintains that the information purportedly withheld by the EOUSA already has entered the public domain through trial testimony and "excerpts . . . of the recording being played to the jury" in open court to "the public that was present in the courtroom during these proceedings." McRae Decl. ¶ 15. It is true that public disclosure of information may lead to the waiver of the FOIA exemption, but plaintiff does not establish that the records pertaining to the events of April 16, 2004 are the records from which the EOUSA has redacted information under Exemption 7(C). He bears the initial burden of showing that the requested information: (1) is as specific as the information previously disclosed; (2) matches the information previously disclosed; and (3) was made public through an official and documented disclosure, *see Cottone v. Reno,* 193 F.3d 550, 554 (D.C. Cir. 1999), yet he fails to meet this burden. Furthermore, it is the requester's obligation to articulate a public interest sufficient to outweigh the individuals' privacy interests, and the public interest must be significant. *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). Plaintiff articulates no such public interest, and, therefore, the third parties' privacy interests prevail.

The EOUSA's decision to withhold the names of and identifying information about third parties is entirely consistent with the prevailing law. *See, e.g., Hodge v. Fed. Bureau of Investigation*, 703 F.3d 575, 580 (D.C. Cir. 2013) (withholding "private information of various investigators, witnesses, informants, and suspects" under Exemption 7(C)); *Marshall v. Fed. Bureau of Investigation*, 802 F. Supp. 2d 125, 134-35 (D.D.C. 2011) (withholding names and identifying information of FBI Special Agents, FBI personnel, and third parties of investigative interest); *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 47 (D.D.C. 2009) (withholding

names of and identifying information about FBI Special Agents and support personnel, third parties merely mentioned, third parties of investigative interest, as well as identities of and information provided by cooperative witnesses).

### D. Exemption 7(D)

Exemption 7(D) protects from disclosure records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). The ATF withholds under Exemption 7(D) "selected portions of ATF Reports of Investigation[] which would reveal the identity of a confidential source . . . who provided information regarding specifics about plaintiff's criminal activity." Defs.' Mem., Decl. of Peter Chisholm ("Chisholm Decl.") ¶ 6. Its declarant clarifies that this information "was redacted originally under Exemption 7(C)" alone, and ATF now claims both Exemptions 7(C) and 7(D) "for this information pursuant to this litigation." Chisholm Decl.. ¶ 9. The ATF's prior declaration, while invoking Exemption 7(D), failed to show that the information withheld had been furnished by a confidential source and that its release could reasonably be expected to disclose the source's identity. Nevertheless, based on the Court's prior rulings that all the ATF records responsive to plaintiff's FOIA request were compiled for law enforcement purposes and that third-party information properly is withheld under Exemption 7(C), *see McRae*, 869 F. Supp. 2d at 164-66, the Court need not have determined the applicability of any other exemption with respect to this same confidential source information. *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011); *Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994). Had the confidential source information been withheld solely under Exemption 7(D), the ATF's

10

latest submission demonstrates that it remains exempt from disclosure because its release could reasonably be expected to disclose the identity of a source who furnished information on a confidential basis to the ATF in the course of its investigation of plaintiff's criminal activities.

According to the case agent involved in the investigation, it is believed that this source "was not a long-term confidential source" with whom ATF executed a signed agreement; rather, he or she "was likely working as a cooperating defendant in the hopes that he/she would receive consideration at sentencing in a pending criminal case." Chisholm Decl. ¶ 6. The declarant articulates two bases for concluding that the source provided information under an express grant of confidentiality, notwithstanding the absence of a written agreement or long-term arrangement with the ATF.

First, the declarant notes that the source's name does not appear in the Reports of Investigation. Ordinarily, the case agent "verbally notifies any confidential source[] . . . that all legal means available would be used to protect his/her identity," and in this instance he "believes that he notified the confidential source . . . that his/her identity would be protected." *Id.* ¶ 8. Consistent with these assertions, the source is "referred to as 'CI,' which is an abbreviation for 'confidential informant' or 'CS,' which is an abbreviation for 'confidential source.'" *Id.* He or she "is never named in the Reports of Investigation." *Id.* Use of these abbreviations comports with ATF practice "to omit names and identifying information of sources from Reports of Investigation when a source has received an express grant of confidentiality." *Id.* In contrast, the full name of a witness or third party providing information who has not been assured confidentiality ordinarily would appear in a Report of Investigation. *Id.* The declarant considers "the verbal promise that the case agent believes he made to this source . . . an express assurance of confidentiality sufficient to withhold information pursuant to Exemption (b)(7)(D)." *Id.*

Second, the declarant points to "the violent nature of the plaintiff's offenses" as "contribut[ing] to the importance of keeping this agreement of confidentiality and further supports the evidence that he/she was given a promise of confidentiality." *Id.* ¶ 9a. "The source's information was directly linked to [plaintiff's] criminal charges in ATF's investigation." *Id.* He or she "provided information . . . regarding [plaintiff's] drug activities and participated in undercover operations involving [plaintiff] directly." *Id.* In these circumstances, the declarant sees "the extreme likelihood he/she was guaranteed confidentiality and believed that his/her identity would be protected from [plaintiff]." *Id.* Furthermore, protection of a confidential source is necessary "to ensure his/her safety," and "to preserve ATF's ability to recruit confidential sources in the future under similar agreements of confidentiality." *Id.*

### III. CONCLUSION

The Court concludes that the EOUSA's search for records responsive to plaintiff's FOIA request was reasonable under the circumstances, and that its decision to withhold information pertaining to third parties under Exemption 7(C) was appropriate. Although confidential source information properly has been withheld by the ATF under Exemption 7(C) alone, through its declarant ATF has demonstrated that the same information also would properly have been withheld under Exemption 7(D). Accordingly, defendants' motion for summary judgment will be granted. An Order accompanies this Memorandum Opinion.

DATE: 5/26/13

_____
RICHARD J. LEON
United States District Judge